Good morning, everyone. Our first case up for oral argument this morning is 24-2888 Atlantic Gas Light Company v. Navigators Insurance Company. Good morning. Good morning, Your Honors. Mr. Friedman, whenever you're ready. Thank you. Again, my name is Seth Friedman. I represent Navigators Insurance Company in this dispute. Atlantic Gas Light is not an additional insured because the underlying plaintiffs made their own decision to release USIC Navigators named insured and any vicarious liability claims against AGL and then sue AGL for sole negligence. Since AGL is not an additional insured, all of AGL's claims fail as a matter of law. This case is a straightforward insurance coverage dispute. The policy provides that AGL is an additional insured only with respect to liability for bodily injury caused in whole or in part by the acts or omissions of Navigators named insured USIC. It is undisputed that the underlying lawsuits seek to impose liability on AGL exclusively for their own acts or omissions in responding to the gas leak. Mr. Friedman, if I could ask you a question about that particular point. Absolutely. The language is liability for bodily injury, property damage, or personal advertising injury caused in whole or in part. You're saying the subject of caused is liability as opposed to bodily injury? Yes. We're looking at the word liability, the liability that AGL has. Right, but we're also looking at cause, right? Correct. What cause means. And so it says liability for bodily injury caused. And my question to you is cause can presumably refer or the subject of cause could be liability or it could be bodily injury. I think your interpretation is that the subject of cause should be liability, not bodily injury. Or am I wrong about that? Yes, but also I think in this case, if you look at the underlying lawsuits, the bodily injury that they're suing for, the cause of the bodily injury is AGL sole negligence. And it can only be AGL sole negligence. Well, that's assuming that we interpret cause to mean some sort of legal cause, approximate cause, right? If we take the plain word, the plain everyday meaning, if I asked my kids what does cause mean, they wouldn't say, oh, it's liability or legal cause or approximate cause. And so let me ask you this. If the subject matter of cause is bodily injury, would that pretty much undercut your argument with regard to the interpretation of that particular provision? And if not, why not? No, I think because it's all controlled by the allegations of the underlying lawsuit. You have to look to what's going on in the underlying lawsuit and the allegations by AGL, excuse me, by the underlying plaintiffs against AGL and what they're saying caused that. So that's what the bodily injury is for. They're saying AGL caused our bodily injury. Look at that. And that's why, in this case, the cause, the sole approximate cause for the underlying plaintiff's claims is AGL sole negligence. Why do you rely so heavily on the settlement agreement then? Indiana law does say you look to the underlying complaint. And nobody, neither side, has identified any allegations in the underlying state court complaints that rely on USIC's conduct causation of the bodily injury. Why do we need to go further than that? I'm fine with that, Your Honor. I think the underlying… You relied in a lot of your brief well beyond that. You spent a lot of time talking about the settlement agreement, and I share some of the questions that Judge Lee just asked you because there's a difference in focusing on liability versus causation. But my question to you is do we even need to go there under Indiana law? No, because it's controlled by the… And that's why we've looked at the settlement agreement, and that also forecloses any possibility that they're being held liable for any actions of USIC on top of the fact that the underlying lawsuits themselves do not allege any wrongdoing by USIC. How would it foreclose any liability when the release is focused on liability as opposed to USIC's conduct causing the bodily injury? Can you say that again, Your Honor? If there is evidence put in at the state court trial about USIC's conduct potentially causing what's at issue here, even though there's nothing about them being liable, how would the settlement agreement help then? Because at the end of the day, they can't – what caused it – the only thing they can use, AGL can use it to say, look, you can't try and use anything USIC did against us at the trial. That's what the settlement agreement also says because there's vicarious liability release as well, and it kind of cuts that off, and it's focusing – all they're worried about in the underlying complaints is AGL's response to the gas leak. Do you know what the status of the state court action is? Everything's been settled, Your Honor. Okay. So, confidentially, I – Yeah, I'm not asking for a ballot, but everything's been settled. Correct, yes. Everything's been settled. So, yes, the settlement agreement basically makes – ends up cutting off that liability, and it's really – if you look at the underlying lawsuits, I think, Judge Sandeep, you hit it, is that it doesn't matter for the underlying lawsuits why the gas line was ruptured at all. It's all about the response, and it is undisputed that is AGL's responsibility. So, the underlying settlement agreement, I understand it's confidential, but not the settlement agreement that we're discussing in the briefs, but the settlement of the underlying state court action. Is there any language in there pointing that would be relevant to this in terms of cause? Your Honor, I'm not prepared to answer that right now. I can look and get back to you. I haven't looked at those in a long time, Your Honor. Okay. So, I can – if you want that, we can find that out for you. Okay. Mr. Friedman? Yes. I think Judge Sandeep raises a really good point. When I look with regard to the complaint of the underlying cases, and referring to the complaint, I think this is the one by O'Gwinn, paragraph 20 says that on August 17, 2018, sometime between 930 and 10 a.m., a construction crew was boring underground and struck the AGL gas line and a sewer line located on Cortland Avenue just east of U.S. 441. Right? I see that. So, that was the kind of – to some extent, putting the approximate cause aside, that was a but for cause of the damages. Right? You agree with that? And – I take it you agree with that. That would qualify as a but for cause because if they didn't do the boring, then none of the damages would have happened. I disagree necessarily, Your Honor, because what the real issue in the underlying case is about is if they had responded to the gas leak correctly, this wouldn't have happened. In other words, it's not that the gas – that gas line was hit. It's that the response to the gas line and saying everything was fine, they didn't go with the combustible gas detectors. That's what these complaints are about. And so, that's really the issue. I'm not going to concede that it's a but for cause because if – I thought part of it – sorry to interrupt, but was on not purging the gas lines. Again, that's also – Because they've been there for so long and not shutting off the flow of gas, not purging the gas lines. Yes, there are those allegations. I'm aware of those. Extensive allegations. Yes, and that's – again, that's AGL's responsibility and also – but none of this happens if AGL properly responds to the leak. That's the kind of the main issue in this because it leeches out from that, goes down there. There's allegations that they say, hey, I smell gas. I think it's a stretch for you to say that based on the complaints here that that's the focus of the negligence. That may be one piece of the negligence, but the complaints included a lot of additional allegations, including the ones I just mentioned about AGL's alleged negligence. Yes, it's all AGL's alleged negligence. Yes, correct. I would agree with you, Your Honor. So the only other thing I want to hit on, there was one case we didn't get to our briefing on and it's discovered. I'm sorry. Go ahead. So you're saying that even if the construction crew had not struck the gas line inadvertently or negligently or whatever, that the plaintiffs in that one case would still have a cause of action? No, I'm not saying that. All right. So I didn't think so. So I think we can agree then that the construction crew striking the gas line is at least a but-for cause to the lawsuit, to the damages, right? And then I guess from there, the reason why, I guess in the way I kind of look at it, and you can tell me why this might be incorrect, is that the construction crew struck the gas line, and the but-for cause of that was USIC's inability or refusal or failure to identify where the gas line was. And so I still kind of – and so the way I kind of perceive it is I wonder whether USIC's conduct or misconduct or alleged misconduct was a but-for cause of the damages because that led to the construction crew, which led to the boring, which led to everything else that kind of took place. And if I read cause to be but-for cause, we can argue about whether or not that's the right way to look at it. It would seem that this lawsuit, at least in my mind, would fall squarely within the definition of additional insured. And I'm wondering kind of – and I want you to kind of push back against that.  I'm giving you this opportunity. Harsco – the Scott scale versus Harsco said this language means proximate cause. And the proximate cause of the underlying lawsuit, when you look at it, the proximate cause of the loss is AGL's response to the gas leak. That's the proximate legal cause of the damages they're claiming in the underlying lawsuits, which – because the underlying plaintiffs made this decision. It's their choice to do this. They chose to release. We didn't force them to do it. No one forced the plaintiffs. They made this freely, willingly, and voluntarily. And so there are consequences to that in all of this. And so they made that decision to release everybody – excuse me, release USIC and vicarious liability, sue AGL for its sole negligence. Now, there are consequences for insurance, but they went against AGL, and I don't think that was an issue for them apparently. So that's where we left it. So I think it's proximate cause under Harsco under Indiana law, and that's how the trial judge looked at it. And I think even under Harsco, we're correct. The reasoning under Harsco means we're correct. I think the trial judge incorrectly applied Harsco. I do want to bring up one case. You are into your rebuttal. Go ahead. Well, I'm going to save the rest of the time for my rebuttal, Your Honor. Okay. Thank you. Thank you. Mr. Beckholt, good morning. Good morning, Your Honor. May I begin? Please. Thank you. My name is Chris Beckholt. I represent the Appalachian Cross Appellants, Atlantic Gas Light Company, and Southern Company Gas. With the Court's permission, I'd like to refer to those collectively as just AGL. The fundamental problem with the argument from the navigator's side is that it's predicated upon the contention that a company's insured status, as well as the scope of coverage that's available to that company, is to be determined by the allegations in the complaint. But as the Court knows from its review of the endorsement at issue in this case, there's no mention of allegations in the complaint, and there's no usage of the word vicarious liability. Rather, as Judge Lee correctly pointed out, the determination is made in terms of cause. Did the named insured cause, in whole or in part, bodily injury or property damage at issue as a result of its acts or omissions? And in this case, it is undisputed, undisputed, that the named insured, USIC, failed to mark where this gas line was. The language you've just cited is from the umbrella policy, referring back to the primary policy, that coverage applies if the conduct caused bodily injury, if USIG's conduct caused bodily injury. In whole or in part, yes. But Indiana law does say that an insured's duty to defend attaches based on the allegations in the underlying suit. So it seems to me like you're saying, well, it doesn't matter what the underlying suit says. That's how you determine whether or not the suit is based on USIC causing bodily injury. I understood, Your Honor, but you have to understand that this particular rupture of the gas line just didn't happen because of some natural disaster. I know, but would you agree that the underlying lawsuits are really focused on AGL's negligence and not USIC's conduct? Only because of this settlement agreement and release that was entered into. For whatever reason, you agree, though. You didn't identify anything in your briefing that points to USIG's conduct being alleged in the underlying lawsuits. That's correct. So those lawsuits really are based on the allegations in the complaint are based on AGL's conduct and alleged negligence. Correct, because of the settlement agreement and release. So looking at Indiana law, which says when you determine an insurer's duty to defend under the policy language, that you look at the allegations of the underlying complaint. Why doesn't that end our inquiry? Well, because under Indiana law, you also can look at extrinsic evidence. It's not limited to the four corners of the complaint. And that's exactly what happened in this situation. As I just stated, this is not a situation where we had a natural disaster and all of a sudden we had a gas leak. It was always AGL's position that the proximate cause of this entire accident was the failure to mark where the line was. And the best evidence of that, I understand the allegations in the complaint, but when you look at what the judgment is that we're seeking to enforce in this particular case, it's only $13.8 million. And that represents four years of prejudgment interest. It represents the seven figures in defense costs that were incurred, as well as the settlement of these three plaintiffs. And if you looked at the liability statements that were attached to our motion for reconsideration, you see how horrific, horrific these injuries were. Three young women. I don't think anybody disputes that, but that's not the question here. The question is, what does this insurance policy cover in terms of AGL's conduct? What it covers with respect to AGL's conduct is their tortious conduct. There are endorsements that were available back in 2019 when these policies were issued that could have restricted coverage for additional named insurers. One of them is known as the contractor's extension endorsement. This court may be familiar with some other cases. In order to have an additional insured status under that endorsement, you have to meet three requirements. One, both the named insured and the additional insured have to have the same claims asserted against them. Second, the same law firm has to represent all parties, that is, the named insured and the additional insured. And it specifically states that there is no coverage for the wrongful conduct of the additional named insured. None of those restrictions are found in the endorsement at issue in this case. So what if this case, the underlying case, went to trial against AGL? And if the court during the trial or at the end of the case instructed the jury, you may not find AGL liable based on any conduct by USIC. Is it your position that the policy would still apply? Yes, because don't forget, the underlying cases were under Georgia law, and Georgia law would have permitted, if the underlying cases had gone to trial, for AGL to show that the proximate cause and the percentage of liability ought to be on the shoulders of the jury. I'm just saying, what if they were instructed you can't do that and AGL couldn't bring in any kind of a defense like that? Is it still your position that they would be covered? Well, yes, and the reason why is because there's no restrictive language in the endorsement. As the trial court correctly pointed out, the determination of coverage under the policy is whether or not the named insured caused in whole or in part the bodily injury at issue. Why isn't that restrictive, that USIC caused? Well, it's restrictive in the sense that there has to be some liability on the behalf of USIC for having caused the bodily injury at issue here. But it's interesting that you note that the particular endorsement here was first put into effect by ISO back in 2000. And at that point in time, they moved it from arising out of to caused in whole or in part. And as I interpret the phrase caused in whole or in part, it means anything greater than zero. So if, in fact, USIC is just 1% responsible for the bodily injury, then the endorsement would provide coverage for AGL with respect to its own tortious conduct. As I just indicated, there were other endorsements that were available that would have prevented that from occurring, but that's not the endorsement that was on this policy. And when you look at the cases that have interpreted this particular endorsement, almost universally, all of the courts have held that it provides broad coverage. It's not a situation where it's limited to vicarious liability. In fact, some of the cases cited in our brief specifically state that it's not limited to vicarious liability claims. Although a lot of those cases rely on language that says arising from rather than caused by, and there's a distinction there. Right, and that was the distinction. That's broader. Arising from. Actually, it's not. It seems broader to me. I understood. And that was the problem. That's why ISO in 2000 switched it from arising out of to caused in whole or in part because courts, with all due respect, were putting interpretations on the arising out of that were not with the ISO underwriting intent. And as I said, I think that the phrase caused in whole or in part is pretty clear. It's an objective test. And so long as it's greater than zero, then the policy is to provide coverage. Mr. Bickel, if we could take a step back. So the navigators is an excess policy carrier, right? Correct. And so the claim was tendered to them for, I take it, for identification of defense costs and as well as identification of any liability damage to the extent there is any, right? Well, the navigators policy is somewhat like a primary policy in the sense that it provides both defense costs on a supplemental basis as well as indemnity up to the limits of liability, which were $10 million. Okay. I guess my question then goes to, were the lawsuits ever tendered to navigators under the obligation to defend? Yes. Do they have a duty to defend? Absolutely. And, you know, contrary to what was cited in the brief of... Well, I mean, the reason I ask it, it wasn't quite clear from the district court's opinion whether we're dealing with a duty to defend versus duty to indemnify because obviously, as Judge Saini correctly noted, you know, duty to defend is a bit broader than duty to indemnify, right? And you look at kind of different things. And so as I was kind of going through the record and through the summary judgment motions, it wasn't quite clear to me what exactly were we talking about. Were we talking about duty to defend and a failure to defend, or were we talking about failure to indemnify the cost of defense, which I think are two different things. So what happened here was at the mediation, the limits of liability of the primary policy were tendered as part of a settlement. So at that point in time, the navigators policy attached. And at that point in time, they had a duty both to defend and to indemnify up to their limits of $10 million. And that's what happened after the mediation. When those lawsuits were filed, you know, I tendered the lawsuits of these three plaintiffs over to navigators for defense and indemnification. The lawsuits that we're talking about here, not the initial ones that resulted in settlement. No, correct. These are the ones that were asserted against ADL. Against ADL, okay. And, you know, that's part of the bad faith claim that we asserted, was that rather than making an independent determination as to whether or not the navigators policy had to provide defense and identification, what is it the navigators did? It goes and solicits, solicits from the primary insurer, the name insured, and the name insured's outside counsel a coverage opinion as to whether or not navigators ought to provide coverage. You mentioned bad faith. I'd like to move there now while we have a little bit of time left, because Indiana law is not as clear as it could be for us on your bad faith claim.  Can you tell us, does your claim require us to hold that navigators owed ADL a duty of good faith before the mediation, or are you arguing that we can find bad faith even if we don't find there is a duty? Well, I would cite to the court the Philco decision. I think that that's kind of four square with the situation that was prevented here, where the court stated that when you have a situation where it's clear that the underlying limits are going to be exhausted, the umbrella or excess carrier has a duty of care. Philco only cited other federal decisions. Correct. Do you have anything under Indiana law for us? No, I don't. But nobody has rejected, as far as I'm aware, at the state court level over in Indiana, the Philco decision. It's been around for a while. But didn't Philco deal with a lawsuit between the carriers, that is, the excess carrier and the primary carrier? It did. And it seemed like language the relationship the court was focusing on was what duties did the excess have with regard to its dealing with the primary carrier. I'm not sure that that would extend to the duties an excess carrier would have to the insured. Well, I don't think that you can have a higher duty that an excess carrier owes to a primary insurer or a primary insurer to an excess than the duty that's owed to the named insured. I mean, typically on these claims where the excess insurer claims that the primary insurer didn't handle the claim properly, that's the same kind of claim that you would have by the named insured as against the insurer for not handling a claim properly. And quite frankly, I mean, the key point here as far as AGL is concerned is that when these liability statements were submitted back in September of 2019, it was crystal clear, crystal clear that the underlying limits of liability of the Zurich policy, the primary policy, which were only $2 million, were going to be grossly inadequate to deal with the situation that was presented. You know, I won't go through all the liability statements with you, but you can look at them. But just one point, you know, there was $1.2 million that had already been spent on the medical expenses, you know, for these three young women. And it was unimaginable that the navigator's policy wasn't going to be, you know, implicated in order to reach a resolution of those claims or to pay a judgment. And what did navigators do? Nothing. Nothing whatsoever. And in fact, you know, that's one of the basis of our bad faith claim, is that from the time of this action up to the time that I filed this lawsuit, they did nothing, absolutely nothing to protect AGL's interests, despite from our position owing a duty of care to protect AGL. No later than September of 2019 when they received the liability statements and understood that there was a $51 million demand and realizing, you know, how terrible this action was. In your mind, when was the aggregate limits of the underlying insurance policy, the primary policies, when were they exhausted? At the mediation. I mean, all you have to do is look at the denial of coverage letter from Zurich. That was their very first defense. We don't owe you a defense because the underlying limits were paid, you know, as part of the mediation settlement. And so I take it that under that reading, navigator didn't owe a duty to defend or to investigate prior to the mediation because that's when the limits were exhausted. Correct. They owed a duty of care. I mean, typically when one talks about a defense obligation or an indemnity obligation, it talks about paying money. And we're not contending that navigators had to pay one penny until the underlying limits, you know, were exhausted. But that was the problem. We're at a mediation. We're trying to settle the claim. The Zurich money of $2 million is put on the line. Navigators is nowhere to be seen. When you say they were exhausted at the mediation, do you mean they were exhausted when you settled at the mediation? Correct. Okay. Correct. And that, from our perspective. So the settlement is what exhausted them. Right. The settlement was exhausting. But you're saying they should have been there foreseeing that the Zurich money would have run out very quickly at the settlement. At a minimum, they should have been available by phone. But given the nature of this particular mediation, they really should have been there. And they didn't even respond to my request that they attend the mediation. Okay. I mean, if you look at the record, from the time of the accident. My time is up. Yes. You can finish answering. From the time of the accident until the time that I filed this lawsuit, Navigators had exactly one communication with AGL. And that was the denial of coverage letter. And that one communication, that wasn't even drafted by Navigators. It was drafted by the outside counsel. Thank you very much. Thank you. Briefly, Your Honors, I want to make sure we get the facts straight on this. The first lawsuits related to any of this were the underlying lawsuits, the three women that are at issue in this case. There was no lawsuit at the time of the mediation. And the trial court was correct in holding Navigators had zero duties, contractual duties, until they exhausted the underlying policy. They talked about duty of care. And that was at the settlement conference. That was at the settlement conference. And that's why they – that's a motion to dismiss that we won the – so the mediation-based claims was on the motion to dismiss and the court said, even assuming the complaint is true, right? You had no contractual duties, so you don't owe anything. And then we moved to the post-mediation and the lawsuit claims that are at issue here. And I think the court got it right on all the bad faith and everything there. But the couple of things I want to hit on, you know, on the additional short arguments, the facts of this case are certainly unique, right? I haven't found any other cases with these exact facts. Otherwise, we probably would have cited them to you. I did find one case in going through that wasn't cited in the briefing, but I do want to raise it with you because I think it's instructive. It had some different language, and that's the case of Baltimore Gas and Electric versus Commercial Union Insurance, and that is 688A2D496. It's out of Maryland from 1997. Now, it does have a different additional insurance endorsement, but what I think is important in that case is, in that case, the named insured and additional insured are both being sued and being defended by the named insured's carrier. And in the middle of the case, the plaintiff dismisses everybody except for the additional insured, everybody. And at that point, the court said, well, the AI is not entitled to coverage anymore because it's only for the sole negligence of the additional insured, and therefore there's no more coverage. So that's just to show it's about the allegations of the complaint. Like, Judge Taney, if you've been talking about today, it's the allegations of the complaint that we're driving the duty to defend. So our duty to defend is driven by the allegations of that complaint filed in, I think it's December of 2019 and tendered in January of 2020. That's what's driving that, and that's what's driving the liability for a body injury caused in whole or in part by the named insured at that point, and it's AGL sole negligence. The plaintiffs made this decision, right? The plaintiffs made their choice here, and that has consequences. No one made them do it. Navigators was not a part of the settlement. We had nothing to do with it. The record is very clear. There's an affidavit in the record from USAC's counsels that says we had nothing to do with it, we weren't involved, and we were told after the fact. So all of this was just presented to us after the fact, and I think that is proper. If you look at the allegation of an underlying complaint, it's solely as to AGL. I see I'm running out of time, and if you have any other questions, I'm happy to answer them. Thank you, Mr. Friedman. Thank you. The court will take the case under advisement.